## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JARROD PALMER,<br>2336 Pittston Avenue, Scranton,<br>Pennsylvania 18505, | JURY TRIAL DEMANDED<br><br>CIVIL ACTION<br><br>CASE NO. 3:17-cv-02369-MEM |
| *Plaintiff* | |
| v. | **<u>FIRST AMENDED COMPLAINT</u>** |
| CITY OF SCRANTON,<br>340 North Washington Ave.<br>Scranton, PA 18503 | <u>ELECTRONICALLY FILED</u> |
| JOHN LUBECK,<br>*In his individual and official capacity*<br>100 S. Washington Ave.<br>Scranton, PA 18503 | |
| JASON KNOCH,<br>*In his individual and official capacity*<br>100 S. Washington Ave.<br>Scranton, PA 18503 | |
| ROBERT STANEK,<br>*In his individual and official capacity*<br>100 S. Washington Ave.<br>Scranton, PA 18503 | |
| UNKNOWN INDIVIDUAL(S) IN THE<br>SCRANTON POLICE<br>DEPARTMENT,<br>*In their individual and official capacity*<br>100 S. Washington Ave.<br>Scranton, PA 18503, | |
| *Defendants*. | |

## <u>FIRST AMENDED COMPLAINT</u>

# I. **INTRODUCTION**

1.      This is an action for damages brought under 42 U.S.C. §§ 1983, 1988, the Fourth Amendment, the Fourteenth Amendment and for violations of Pennsylvania State law.

# II. **JURISDICTION AND VENUE**

2.      The foregoing paragraphs are incorporated herein by reference.

3.      This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, the Fourth Amendment, and the Fourteenth Amendment to the United States Constitution. Jurisdiction is based upon 28 U.S.C. § 1331 and the previously mentioned statutory and Constitutional provisions.

4.      Plaintiff invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367 to hear and decide claims under state law as the state law claims are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is proper under 28 U.S.C. § 1391 in this Court because the conduct complained of occurred here and at least one defendant resides here.

# III. **PARTIES**

6.      The foregoing paragraphs are incorporated herein by reference.

7. Jarrod Palmer ("Plaintiff") was a minor individual at the time of the incidents alleged in the complaint and resides at 2336 Pittston Avenue, Scranton, Pennsylvania 18505.

8. John Lubeck ("Lubeck") is, and was at all times relevant to this complaint, a police officer employed by the City of Scranton and acting under color of state law. This suit is against Lubeck in his personal and official capacity.

9. Jason Knoch ("Knoch") is, and was at all times relevant to this complaint, a police officer employed by the City of Scranton and acting under color of state law. This suit is against Knoch in his personal and official capacity.

10. Robert Stanek ("Stanek") is, and was at all times relevant to this complaint, employed by the City of Scranton, a Corporal at the Scranton Police Department (the "SPD"), and acting under color of state law. As such, he was the commanding officer for Lubeck, Knoch, and the Unknown SPD Individuals and was responsible for Lubeck's, Knoch's, and the Unknown SPD Individuals' training, supervision, and conduct. He was also responsible by law for enforcing the regulations of the SPD and ensuring that SPD officers obey the laws of the Commonwealth of Pennsylvania and the United States. At all relevant times, Stanek was acting in such capacity as the agent,

servant, and employee of defendant City of Scranton. This suit is against Stanek in his personal and official capacity.

11.    The Unknown Individual(s) in the Scranton Police Department ("Unknown SPD Individuals") are, and at all relevant times were, employed by, working for, or working with the City of Scranton and acting under color of state law. This suit is against the Unknown SPD Individuals in their individual and official capacities.[1]

12.    At all relevant times hereto, and in their actions and inactions, Defendants were acting alone and in concert under color of state law.

13.    At all relevant times hereto, Lubeck, Knoch, Stanek and the Unknown SPD Individuals were acting directly or indirectly on behalf of the City of Scranton.

---

[1] Plaintiff is permitted to name "fictitious" individuals as stand-ins for real parties that he is unable to identify until discovery. *Scheetz v. Morning Call Inc.*, 130 F.R.D. 34, 36–37 (E.D. Pa. 1990) ("Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed.") (citing *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 31–32 (3d Cir.1985); *Varlack v. SWC Caribbean, Inc.,* 550 F.2d 171, 174–75 (3d Cir.1977); *Bufalino v. Michigan Bell Tel. Co.,* 404 F.2d 1023, 1028 (6th Cir.1968); *Fludd v. United States Secret Service,* 102 F.R.D. 803, 805 (D.D.C.1984); *Lowenstein v. Rooney,* 401 F.Supp. 952, 960 (E.D.N.Y.1975); *Phillip v. Sam Finley, Inc.,* 270 F.Supp. 292, 294 (E.D.Va.1967)). Plaintiff intends to install the real parties after discovery permits their identification.

14.     At all times relevant hereto, Lubeck, Knoch, Stanek and the Unknown SPD Individuals were acting in the course and scope of their agency, authority, and/or employment with the City of Scranton and under color of state law.

15.     The City of Scranton is a municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs, and controls the SPD.

16.     SPD employed Lubeck, Knoch, Stanek and the Unknown SPD Individuals at all times relevant hereto.

17.     Stanek was the acting ranking SPD officer on duty during the time periods relevant to this complaint. Therefore, Stanek was supervising or in charge of the conduct of his subordinates.

18.     Defendants acted in concert when deciding to conduct the unconstitutional search and seizure and false arrest described in detail *infra*.

19.     Defendants are jointly and severally liable for the injuries and damages suffered by Plaintiff as set forth fully below.

## IV. **STATEMENT OF CLAIM**

20.     The foregoing paragraphs are incorporated herein by reference.

21.     On June 6, 2017, Plaintiff was at a party with his friends in the City of Scranton.

22.      Plaintiff and some of his minor friends left the party in Plaintiff's truck.

23.      After traveling about five (5) blocks, Lubeck initiated a traffic stop on Plaintiff's vehicle.

24.      Plaintiff stopped his vehicle and otherwise complied with Lubeck's orders.

25.      Lubeck approached Plaintiff's driver's side window and stated that he was going to check to see if Plaintiff had been consuming alcohol.

26.      Lubeck stated that if Plaintiff was not drinking, Lubeck would let him go on his way.

27.      Lubeck instructed Plaintiff to get out of his vehicle.

28.      Lubeck conducted a pat down search of Plaintiff's person.

29.      Lubeck then administered field sobriety tests to Plaintiff.

30.      Lubeck informed Plaintiff that he passed the field sobriety tests.

31.      Lubeck also informed Plaintiff that he was going to let him leave.

32.      Moments later, an unknown SPD officer arrived on the scene.

33.      This unknown SPD officer took down the names of the minor individuals in Plaintiff's vehicle.

34.     Lubeck then informed Plaintiff that he would have to wait for Lubeck's supervisor to arrive before he could let Plaintiff leave.

35.     During this time, traffic started to back up behind Plaintiff's vehicle since the traffic stop was conducted in the roadway.

36.     Minor individuals were driving by Plaintiff's vehicle and the scene of the traffic stop. These minor individuals knew Plaintiff and observed Plaintiff as the subject of the traffic stop.

37.     Knoch then arrived on the scene of the traffic stop.

38.     Knoch behaved in an aggressive and sarcastic manner at the scene of the traffic stop.

39.     Knoch asked Plaintiff questions while they awaited Stanek's– the supervisor–arrival.

40.     When Stanek arrived at the scene of the traffic stop, Stanek and Knoch talked off to the side.

41.     Stanek and Knoch then approached Plaintiff and Lubeck.

42.     At this point, Lubeck was ordered to administer a second set of standard field sobriety tests on Plaintiff even though Plaintiff had already passed the standard field sobriety tests.

43.     Lubeck and Stanek conducted the second round of standard field sobriety tests on Plaintiff.

44.     Plaintiff was again informed that he passed the standard field sobriety tests.

45.     Plaintiff asked Knoch if he should call his parents to which Knoch replied that he should have already called his parents.

46.     Plaintiff then called his mother to come and pick him up.

47.     While waiting for his mother to arrive, Lubeck approached Plaintiff and informed him he was under arrest for driving under the influence.

48.     Lubeck then handcuffed Plaintiff and otherwise placed him under arrest.

49.     Knoch directed Lubeck to handcuff Plaintiff

50.     Lubeck then stated that arresting Plaintiff was ridiculous and that he could not believe he was being ordered to do so.

51.     Knoch then directed Lubeck to take Plaintiff to the SPD headquarters for a chemical test of his blood.

52.     Lubeck stated that his shift had ended and that he did not want to take Plaintiff for a blood test since Plaintiff was not intoxicated.

53.     Knoch then called another unknown SPD officer to the scene.

54.     This unknown SPD officer placed Plaintiff in a police vehicle and transported him to a facility to conduct a chemical test of Plaintiff's blood.

55.     The unknown SPD officer was informed over the radio that he could not take Plaintiff to the SPD headquarters for blood work because he was a minor.

56.     Plaintiff was then transported by the unknown SPD officer to the hospital for a chemical test of his blood.

57.     Upon arrival at the hospital, Plaintiff was escorted by the unknown SPD officer into the hospital while he was handcuffed.

58.     After a period of time, Plaintiff was called into a room where the handcuffs were removed.

59.     A nurse pierced Plaintiff's skin with a needle and removed blood from his body.

60.     After the blood draw was completed, the unknown SPD officer placed Plaintiff back in handcuffs and transported him to the SPD headquarters.

61.     At SPD headquarters, the unknown SPD officer wrote down a physical description of Plaintiff, took his fingerprints, had him sign forms, and photographed him.

62.     The unknown SPD officer released Plaintiff into his mother's custody when his mother arrived at SPD headquarters.

63.     The results of the chemical test of Plaintiff's blood showed that he had a blood alcohol content of 0.00% and that no controlled substances were present in his blood.

64.     The actions of Lubeck, Knoch, Stanek and the Unknown SPD Individuals were committed deliberately, intentionally, willfully, wantonly, and constitute conduct so egregious as to shock the conscience.

65.     The actions of Lubeck, Knoch, Stanek, and the Unknown SPD Individuals was in callous disregard of Plaintiff's constitutional rights.

66.     These facts are demonstrated by, among other things, Defendants arresting Plaintiff without probable cause after he passed standard field sobriety tests.

### _Count I – 42 U.S.C. § 1983 Claim Unconstitutional Search and Seizure_

67.     The foregoing paragraphs are incorporated herein by reference.

68.     The Defendants in this case are persons within the meaning of 42 U.S.C. § 1983.

69.     At all relevant times, the Defendants were acting under color of law within the meaning of 42 U.S.C. § 1983.

70. While acting under color of law, Defendants caused Plaintiff to be subjected to a deprivation of rights, liberties, and immunities secured by the Constitution. Namely, Defendants caused Plaintiff to be deprived of the rights, liberties, and immunities that he is granted under the Fourth Amendment, Fourteenth Amendment, and Pennsylvania's Constitution.

71. A person has a reasonable expectation of privacy in his/her body.

72. On June 23, 2016, the United States Supreme Court decided *Birchfield v. North Dakota*, which holds a blood seizure is a search subject to the Fourth Amendment's warrant requirement, and may not be administered as a search incident to a lawful arrest for drunk driving. *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016).[2]

73. Plaintiff had a reasonable expectation of privacy in his body at all relevant times.

74. Plaintiff had a subjective expectation of privacy in his body at all relevant times.

75. Plaintiff had an objective expectation of privacy in his body at all relevant times.

---

[2] Notably, there was no lawful arrest in this case.

76.     Defendants never acquired a search warrant to obtain Plaintiff's blood.

77.     Defendants never attempted to obtain a search warrant for Plaintiff's blood.

78.     Defendants had no probable cause to even take Plaintiff for a chemical test of his blood.

79.     The field sobriety tests demonstrated that Plaintiff was not intoxicated and therefore, the Defendants had no right to arrest Plaintiff and take him for a chemical test of his blood.

80.     Defendants conducted an illegal and unconstitutional search and seizure of Plaintiff's blood since they had no probable cause to arrest Plaintiff, had no reason to believe Plaintiff was under the influence of alcohol, and Defendants had no warrant.

81.     No valid exception to the warrant requirement applies in this case.

82.     Specifically, any consent that Plaintiff gave to the blood draw was involuntary, not freely given, and/or otherwise coerced.

83.     Since the Defendants did not comply with Pennsylvania's implied consent law, Defendants had no right to even ask Plaintiff to consent to the blood test.

84.     Warrantless searches and seizures are *per se* unreasonable.

85.     It was the primary objective of the defendants to obtain evidence of a suspected crime when they conducted the warrantless search and seizure.

86.     It is the policy or custom of the City of Scranton and the SPD to fail to train and supervise municipal employees on how to properly decide when probable cause exists to take a person believed to be driving under the influence for a chemical test of his/her blood.

87.     It is the policy or custom of the City of Scranton and the SPD to fail to train and supervise municipal employees on how to properly decide when probable cause exists to arrest a person who is believed to be driving under the influence.

88.     It is the policy or custom of the City of Scranton and the SPD to fail to obtain a search warrant when one is required for a chemical test of a person's blood.

89.     It is the policy or custom of the City of Scranton and the SPD to conduct unreasonable searches and seizures without a search warrant and false arrests if a minor individual is suspected of driving under the influence.

90.     In this case, the need for more or different training regarding when a search warrant is required, when probable cause to arrest for driving

under the influence exists, when probable cause exists to take an individual suspected of driving under the influence for a chemical test of blood, and when a search and seizure is unreasonable and/or otherwise unconstitutional is obvious and the lack of this training is very likely to result in constitutional violations and, in fact, did result in constitutional violations in this case.

91.     The need for more or different training is obvious since SPD officers routinely interact with, arrest, and force individuals suspected of driving under the influence to submit to chemical tests of his/her blood.

92.     Municipal policymakers for the City of Scranton, including but not limited to, Stanek, knew that their employees, servants, or agents, specifically SPD officers, would confront situations where a person was suspected of driving under the influence.

93.     There is a history of municipal employees, such as SPD officers, mishandling searches and seizures, failing to obtain a search warrant when one is required, arresting individuals suspected of driving under the influence without probable cause and otherwise conducting unreasonable searches and seizures in violation of the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution or making a difficult decision in determining whether a search of a person's body can be completed without a warrant or

14

whether a person should be arrested for driving under the influence. This averment is likely to have evidentiary support after a reasonable opportunity for discovery.

94.     If a municipal employee makes the wrong choice in the above-described situations, a deprivation of constitutional rights will result because an unreasonable search and seizure and/or false arrest in violation of the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution will be conducted.

95.     Stanek, trained and/or supervised SPD officers, including but not limited to Lubeck, Knoch, and the Unknown SPD Individuals, on the policies or customs described above.

96.     Because of the above-described policies and customs, Plaintiff suffered a deprivation of liberty under the Fourth Amendment, Fourteenth Amendment, and Pennsylvania Constitution through an unconstitutional search and seizure and false arrest.

97.     Stanek ratified the actions of his subordinates, including but not limited to Lubeck, Knoch, and the Unknown SPD Individuals, in this case by making the decisions on how to proceed during the above described situation and/or knowing of and approving of the decisions made during the above described situation. Therefore, Stanek must have been aware of the customs

or policies established by his subordinates and adopted those customs or policies by ratifying their actions.

98.     As a result of the above-described events, Plaintiff incurred actual damages including, but not limited to hospital bills as a result of the blood work, expungement fees, pain and suffering, embarrassment, humiliation, battery, loss of reputation, invasion of privacy, false arrest, and emotional distress.

99.     Pennsylvania's Constitution provides that the right to reputation is a fundamental right and cannot be infringed upon. *In re J.B.*, 107 A.3d 1, 16 (Pa. 2014) ("This Court has recognized that the right to reputation . . . is a fundamental right under the Pennsylvania Constitution.")(citing *R. v. Commonwealth, Dep't of Pub. Welfare,* 636 A.2d 142, 149 (Pa. 1994); *Hatchard v. Westinghouse Broadcasting Co.,* 532 A.2d 346, 351 (Pa. 1987); *Moyer v. Phillips,* 341 A.2d 441, 443 (1975); *Meas v. Johnson,* 39 A. 562, 563 (Pa. 1898)).

100.     Plaintiff's reputation has been damaged as a result of this unconstitutional search and seizure, false arrest, and the unconstitutional conspiracy.

101.     Indeed Plaintiff's friends and classmates were present in his vehicle during the traffic stop and false arrest.

102.     Plaintiff's classmates and other peers also observed Plaintiff as the subject of the traffic stop as they passed by his vehicle.

103.     Word also spread throughout Plaintiff's school and neighborhood regarding the above described situation.

104.     At the time of the unreasonable and unconstitutional search and seizure, it was clearly established that a warrant was required to subject Plaintiff to the blood draw. Therefore, conducting the blood draw without a warrant would amount to a violation of Plaintiff's rights.

105.     At the time of the blood draw, it was clearly established that probable cause was required to subject an individual under suspicion of driving under the influence to a blood draw.

106.     At the time of the blood draw, it was clearly established that a search warrant was required to subject an individual under suspicion of driving under the influence to a blood draw.

107.     At the time of Plaintiff's false arrest, it was clearly established that probable cause was required to place an individual under arrest for driving under the influence.

108.     A reasonable person would have realized that a warrant was required to conduct the blood draw and that no probable cause existed to even ask Plaintiff to submit to the blood draw.

17

109.     A reasonable person would have realized that the blood draw without first obtaining a warrant was an unreasonable and unconstitutional search and seizure.

110.     A reasonable person would have realized that arresting Plaintiff for driving under the influence without probable cause was an unconstitutional and illegal false arrest.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages, punitive damages, costs, and attorney's fees.[3]

### Count II – 42 U.S.C. § 1983 Claim for False Arrest

111.     The foregoing paragraphs are incorporated herein by reference.

112.     Plaintiff was arrested on June 9, 2017 by Defendants.

113.     No probable cause existed to arrest Plaintiff for driving under the influence.

114.     Defendants had no probable cause to believe that Plaintiff was operating his vehicle under the influence of any drugs or alcohol.

115.     These facts are supported by Plaintiff passing standard field sobriety tests two times, Lubeck stating that Plaintiff was not intoxicated,

---

[3] Plaintiff only asserts the punitive damages claims against Stanek, Lubeck, Knoch, and the Unknown SPD Individuals in their individual capacity. Plaintiff does not assert the punitive damages claim against the City of Scranton since punitive damages cannot be obtained when a lawsuit under 42 U.S.C. § 1983 is brought against an individual in their official capacity.

the chemical blood test results demonstrating that Plaintiff had a blood alcohol level of 0.00%, and Plaintiff showed no signs of intoxication.

116.    All of the facts and circumstances, as described above, within the Defendants' knowledge at the time of Plaintiff's arrest demonstrated that Plaintiff was not operating his vehicle under the influence of drugs or alcohol.

117.    Defendants' had no warrant to arrest Plaintiff.

118.    Defendants falsely arrested Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages, costs, attorney's fees, and punitive damages.[4]

### Count III – 42 U.S.C. § 1983 Claim for Unconstitutional Conspiracy

119.    The foregoing paragraphs are incorporated herein by reference.

120.    The Defendants entered into a conspiratorial agreement prior to Plaintiff being subjected to the unconstitutional search and seizure and false arrest described above.

121.    The agreement between the Defendants was to arrest Plaintiff for driving under the influence without probable cause and to subject him to an unconstitutional and illegal blood draw search without a search warrant and/or probable cause.

---

[4] *See* Footnote 3.

122.    Defendants knew that no probable cause existed to arrest Plaintiff for driving under the influence and/or to take him for a blood draw but nonetheless agreed to arrest Plaintiff and/or take him for a blood draw.

123.    This conspiracy began at the scene of the traffic stop on June 9, 2017.

124.    The conspiracy ended when Plaintiff was released from SPD custody.

125.    The purpose of the unconstitutional conspiracy was to arrest Plaintiff for driving under the influence, even though no probable cause existed to do so.

126.    The purpose of the unconstitutional conspiracy was also to subject Plaintiff to an unconstitutional blood draw search even though no probable cause existed, and no search warrant was obtained.

127.    Lubeck, Stanek, Knoch, and the Unknown SPD Individuals took action to achieve the purposes of this unconstitutional conspiracy by arresting Plaintiff for driving under the influence without any probable cause, and by forcing Plaintiff to undergo a blood draw without any probable cause and/or a search warrant.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages, costs, attorney's fees, and punitive damages.[5]

### *Count IV – False Imprisonment*

128.　　The foregoing paragraphs are incorporated herein by reference.

129.　　Defendants in this case intentionally detained Plaintiff without probable cause.

130.　　Defendants unlawfully detained Plaintiff for driving under the influence since no probable cause to believe Plaintiff was driving under the influence was present.

131.　　Plaintiff suffered damages as described above as a result of Defendants falsely imprisoning him.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages, costs, and punitive damages.

## V. <u>DEMAND FOR JURY TRIAL</u>

132.　　The foregoing paragraphs are incorporated herein by reference.

133.　　Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants for

　　a. Actual damages;

　　b. Punitive damages;

---

[5] *See* Footnote 3.

c.  Attorney's fees;

d.  Costs;

e.  Interest; and

f.   Any further relief that the Court deems just and proper.


Respectfully Submitted,

_s/ Leonard Gryskewicz, Jr._
Leonard Gryskewicz, Jr.
Attorney for Plaintiff
PA321467
Lampman Law
2 Public Sq.
Wilkes-Barre, PA 18701
Phone: (570) 371-3737
Fax: (570) 371-3838